UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAYMOND HUBBARD,

Plaintiff,

v.

ACCEL SCHOOLS LLC et al.,

Defendants.

CASE NO. 2:24-cv-01127-TL

ORDER ON MOTION TO REMAND AND MOTION TO COMPEL JURISDICTIONAL DISCOVERY

This matter is before the Court on Plaintiff Raymond Hubbard's Motion to Remand. Dkt. No. 37. Having reviewed the Motion, Defendant Accel Schools LLC's opposition (Dkt. No. 44), Plaintiff's reply (Dkt. No. 46), and all supporting materials, the Court GRANTS the Motion. The Court also DENIES Defendant Accel Schools LLC's Motion to Compel Jurisdictional Discovery. Dkt. No. 38.

## I. BACKGROUND

Plaintiff filed this putative class action in King County Superior Court against Accel Schools LLC ("Defendant Accel") and 20 anonymous Doe Defendants, (collectively,

"Defendants"), alleging that Defendants violated Washington's Equal Pay and Opportunities Act ("EPOA"). Dkt. No. 1-2 (Complaint). The EPOA requires that employers make certain disclosures in job postings, including "[t]he wage scale or salary range, except where the employer is offering only a fixed wage amount for the opening, the employer must disclose the fixed wage amount rather than a scale or range[.]" RCW 49.58.110(1)(a)(i). Plaintiff alleges that Defendants violated EPOA by failing to disclose the wage scale or salary range in a job posting. Dkt. No. 1-2 at 6 ¶ 27.

Plaintiff makes the following allegations. First, on or about May 15, 2024, Plaintiff applied for a job opening with Defendant Accel in King County, Washington. Dkt. No. 1-2 at 6 ¶ 25. He was "qualified to perform the position for which he applied." *Id.* at 6 ¶ 26. The job posting to which he applied "did not disclose the wage scale or salary range being offered." *Id.* at 6 ¶ 27. In working through the application, Plaintiff "expected that at some point he would learn the rate of pay for the open position." *Id.* at 6 ¶ 28. As a result of the lack of pay information, he was "unable to determine the rate of pay for the position"; he "remains unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts [his] current and lifetime wages"; his "ability to negotiate pay remains adversely affected"; and he "lost valuable time applying" for the position. *Id.* at 7 ¶¶ 31–34.

Defendants timely removed the action to this Court based upon diversity of citizenship of the parties, *see* 28 U.S.C. §§ 1332(a) & 1441, or alternatively, the Class Action Fairness Act ("CAFA"), *see* 28 U.S.C. §§ 1332(d) & 1441. Dkt. No. 1 (Notice of Removal) at 2; 28 U.S.C. § 1446(b). Plaintiff seeks remand to King County Superior Court, alleging that removal was improper because this Court lacks subject-matter jurisdiction over the case. *See* Dkt. No. 37 at 5.

## II. Legal Standard

A party may remove a state-court action to federal district court under 28 U.S.C. § 1441 only if the action could have originally been filed in federal court. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1091 (9th Cir. 2025); 28 U.S.C. § 1441(a). Once a defendant establishes that removal was proper, a court "lacks discretion to remand a case to the state court." *Bandy v. U.S. Bank Nat'l Ass'n ND*, No. C26-1182, 2026 WL 1959139, at *1 (W.D. Wash. July 7, 2026) (citing *Carpenters S. Cal. Admin. Corp. v. Majestic Hous.*, 743 F.2d 1341, 1343 (9th Cir. 1984), *abrogated in part on other grounds*, *Southern Cal. IBEW-NECA Tr. Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 924 n.6 (9th Cir. 2001)). If, after removal, the district court determines that it lacks subject-matter jurisdiction, it must remand the case back to state court. 28 U.S.C. § 1447(c). Generally, courts apply a "strong presumption" against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990)). However, "no antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Nevertheless, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing" Article III standing.).

## III. Discussion

Plaintiff alleges that this Court lacks subject-matter jurisdiction, because Defendant Accel failed to meet its burden of establishing Article III standing requirements, where Plaintiff did not plead sufficient injury-in-fact. Dkt. No. 37 at 5. To support his argument, Plaintiff asserts that his complaint is "virtually identical" to some 24 other complaints that courts in this District

have remanded for lack of injury-in-fact. *Id*. (collecting cases ("Remanded Cases"[1])). Plaintiff requests that this Court remand this action to King County Superior Court. *Id.*

Defendant Accel argues that removal was appropriate because (1) it relied on Plaintiff's allegations in his complaint to establish Article III standing (Dkt. No. 44 at 11); (2) Plaintiff's complaint is not identical to the other Remanded Cases (*id.* at 13); and (3) the Remanded Cases were decided incorrectly (*id.* at 14). Defendant Accel requests that, in the alternative, if the Court is inclined to remand on Article III grounds, the Court should first grant Defendant's request for jurisdictional discovery. *Id.* at 16. Lastly, Defendant Accel argues that if the Court believes jurisdictional discovery is futile, then remand too is futile. *Id.* at 17.

**A. Article III Standing**

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "[T]hat limitation requires a plaintiff to have standing." *Fed. Election*

---

[1] These cases are *Spencer v. Vera Whole Health, Inc.*, No. C24-337, 2024 WL 3276578 (W.D. Wash. July 2, 2024); *Kent v. HCL Techs. Ltd.*, No. C24-1332, 2024 WL 4825383 (W.D. Wash. Nov. 19, 2024); *Wright v. HP Inc.*, No. C24-1261, 2024 WL 4678268 (W.D. Wash. Nov. 5, 2024); *Atkinson v. Aaron's LLC*, 733 F. Supp. 3d 1056 (W.D. Wash. 2024); *Floyd v. Insight Glob. LLC*, No. C23-1680, 2024 WL 2133370 (W.D. Wash. May 10, 2024), *amended by* 2024 WL 3199858 (W.D. Wash. June 26, 2024); *David v. Herc Rentals Inc.*, No. C24-175, 2024 WL 2133369 (W.D. Wash. May 10, 2024); *Floyd v. DoorDash, Inc.*, No. C23-1740, 2024 WL 2325128 (W.D. Wash. May 22, 2024); *Spencer v. RXO, Inc.*, No. C23-1760, 2024 WL 2399974 (W.D. Wash. May 23, 2024); *Atkinson v. Penney Opco LLC*, No. C23-1806, 2024 WL 3579910 (W.D. Wash. July 30, 2024); *Watson v. Deacon Constr., LLC*, No. C24-82, 2024 WL 3579912 (W.D. Wash. July 30, 2024); *Partridge v. Heartland Express Inc. of Iowa,* No. C24-5486, 2024 WL 4164245 (W.D. Wash. Sept. 12, 2024); *Liu v. Veeva Sys. Inc.*, No. C23-1784, 2024 WL 4263176 (W.D. Wash. Sept. 23, 2024); *Spencer v. Jeld-Wen, Inc.*, No. C23-1757, 2024 WL 4566581 (W.D. Wash. Oct. 24, 2024); *Hill v. Spirit Halloween Superstores LLC*, No. C24-1644, 2024 WL 5117460 (W.D. Wash. Dec. 16, 2024); *Dudley v. Transdev N. Am. Inc.*, No. C24-810, 2024 WL 5318337 (W.D. Wash. Dec. 12, 2024); *Perry v. The Boeing Co.*, No. C24-1000, 2024 WL 4867023 (W.D. Wash. Nov. 22, 2024); *Spencer v. Total Renal Care Inc.*, No. C24-1359, 2024 WL 4834901 (W.D. Wash. Nov. 20, 2024); *Mitchell v. LYMI, Inc.*, No. C25-511, Dkt. No. 20 (W.D. Wash. May 28, 2025); *Hill v. ACV Auctions Inc.*, No. C25-616, 2025 WL 1582249 (W.D. Wash. June 4, 2025); *Milito v. Snap Inc.*, No. C25-387, 2025 WL 1587284 (W.D. Wash. June 5, 2025); *Kent v. Tech Mahindra (Ams.) Inc.*, No. 2:24-1168, 2025 WL 2810715 (W.D. Wash. Oct. 3, 2025); *Spencer v. Walmart Inc.*, No. C23-1793, 2025 WL 2910569 (W.D. Wash. Oct. 14, 2025); *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, No. C24-425, 2025 WL 3062646 (W.D. Wash. Oct. 31, 2025); *Eggleston v. Bruckner Truck Sales Inc*, No. C25-1467, 2025 WL 3153503 (W.D. Wash. Nov. 12, 2025); *Floyd v. Photon Infotech Inc.*, No. C24-1372, 2025 WL 3442736 (W.D. Wash. Dec. 1, 2025) (referring to Dkt. No. 37 at 5–6).

*Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). In "every federal case[,]" standing is a "threshold question" that "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In class actions, the standing analysis focuses on the individual class representatives. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Standing requirements "can neither be waived by the parties nor ignored by the court[.]" *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011). As the party seeking to invoke federal jurisdiction, Defendant Accel has the burden of showing the existence of standing. *See Smelt v. County of Orange*, 447 F.3d 673, 682 (9th Cir. 2006) (citing *Lujan*, 504 U.S. at 561).

To establish Article III standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 560–61). This case involves injury-in-fact, the "first and foremost of standing's three elements." *Id.* (citation modified). To establish injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). "[S]tanding requires a concrete injury even in the context of a statutory violation." *Id.* at 341. Thus, "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement." *Id.*

To determine whether a statutory violation constitutes a concrete injury-in-fact, courts in the Ninth Circuit engage in a two-part inquiry. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668,

679 (9th Cir. 2021), *abrogated on other grounds by Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026). First, courts consider "whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)." *Id.* (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)) (internal quotation marks omitted). Second, if the answer is yes, then courts "assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Robins*, 867 F.3d at 1113). Here, because Plaintiff asserts a violation of his statutory right to pay information under the EPOA, the Court will consider the *Magadia* factors. As detailed below, the Court concludes that although the EPOA was established to protect concrete interests, the specific procedural violations alleged in this case did not actually harm, or present a material risk of risk, to those interests.

### *1.* ***Magadia* Step One**

Under the first step, the EPOA's disclosure requirement was enacted to protect concrete interests. Several courts in this District have held that Washington's legislature enacted the EPOA's pay disclosure requirement "to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate." *Spencer v. Vera Whole Health, Inc.*, No. C24-337, 2024 WL 3276578, at *3 (W.D. Wash. July 2, 2024) (analyzing legislative history); *e.g.*, *Hill v. ACV Auctions Inc.*, No. C25-616, 2025 WL 1582249, at *3 (W.D. Wash. June 4, 2025) (same); *Hill v. Hydromax USA LLC*, No. C25-1621, 2025 WL 3677481, at *3 (W.D. Wash. Dec. 18, 2025) (same); *Davis v. Delta Air Lines, Inc*, No. C24-954, 2026 WL 914781, at *3 (W.D. Wash. Apr. 3, 2026) (same). Absent any reason to find otherwise, the Court agrees.

**2. *Magadia* Step Two**

The Parties dispute whether Plaintiff's suit satisfies *Magadia*'s second step. A violation of the EPOA "actually harm[s], or present[s] a material risk of harm," *Magadia*, 999 F.3d at 679, to a plaintiff when the plaintiff was a good-faith or "bona fide applicant." *See, e.g.*, *Atkinson v. Aaron's LLC*, 733 F. Supp. 3d 1056, 1071 (W.D. Wash. 2024) ("Plaintiffs must allege, at minimum, that they applied for the job with good-faith intent, and as such became personally exposed to the risk of harm caused by the violation."). However, what a plaintiff must allege to be found a "bona fide applicant" is not clearly discernable. *See, e.g.*, Order Granting Remand at 4, *Walton v. Clean Harbors Envtl. Servs., Inc.*, No. C24-1051 (W.D. Wash. Oct. 29, 2024), Dkt. No. 24 ("Plaintiff does not allege that she was offered a job, entered any negotiations, or even allege she was qualified for the position . . . . Plaintiff's Complaint includes that Plaintiff applied for the job in good faith . . . . Beyond this conclusory good faith statement, Plaintiff makes no allegations of how her injury is particular or concrete . . . ." (citation modified)); *Hein v. Crash Champions, LLC*, No. C24-1176, 2024 WL 5039900, at *2 (W.D. Wash. Dec. 9, 2024) (conclusory statement of a "good faith" application is insufficient to establish "concrete, particularized harm"); *Vera Whole Health, Inc.*, 2024 WL 3276578, at *3 ("Nowhere has [Defendant] alleged that he was offered an interview or that he engaged in any pay negotiations. All [Defendant] alleges is that he applied to [the] job. And [Defendant] does not even allege he was qualified for the position."); *cf. Moquete v. GNC Holdings*, *LLC*, No. C24-5393, 2024 WL 4553690, at *2 (W.D. Wash. Oct. 23, 2024) (finding claims established injury-in-fact when the plaintiff "applied for and obtained a position").

The Court understands why Defendant finds the case law "fragmented" (Dkt. No. 44 at 9) and acknowledges that it also cannot find a consistent or clear standard that definitively establishes what qualifies as a "bona fide applicant" under the EPOA. The EPOA itself does not

define “job applicant,” nor does it include the language “bona fide applicant.” *See* RCW 49.58.110; *Atkinson*, 733 F. Supp. 3d at 1062 (analyzing legislative history). It appears that the terms “bona fide” and “applicant” were first joined in this context in January 2024, when “House Bill 2349 was introduced to the Legislature, proposing to include the definition of ‘job applicant’ as ‘a person who has made and submitted a *bona fide application* for employment for a position listed by an employer covered by this section.’” *Atkinson*, 733 F. Supp. 3d at 1062 (emphasis added). “The bill did not advance past nomination,” *id.* at 1063, however, and, the concept of “bona fide applicant” met with the inglorious death of unratified legislation. Even so, courts and litigants persisted in reviving the term, and it has become an integral part of judge-made EPOA jurisprudence.[2]

Notably, a court in this District certified the following question to the Washington Supreme Court: “What must a Plaintiff prove to be deemed a ‘job applicant’ within the meaning of RCW 49.58.110(4)? For example, must they prove that they are a ‘bona fide’ applicant?” *Branson v. Washington Fine Wines & Spirits, LLC* (*Branson I*), No. C24-589, 2024 WL 4510680, at *1 (W.D. Wash. Aug. 20, 2024). Answering the second question in the negative, the Washington Supreme Court held that an EPOA plaintiff “is not required to prove they are a ‘bona fide’ or ‘good faith’ applicant to obtain remedies under the statute.” *Branson v. Washington Fine Wine & Spirits, LLC* (*Branson II*), 5 Wn.3d 289, 292, 574 P.3d 1031 (2024). But even if the court in *Branson II* concluded that it is unnecessary to determine whether or not a plaintiff is a “bona fide applicant” for the purpose of pleading a statutory violation, it nevertheless discussed the term at length and, in so doing, endorsed it as a relevant and integral

[2] The term “bona fide” does, however, appear in other sections of the EPOA. *See Branson v. Washington Fine Wine & Spirits, LLC*, 5 Wn.3d 289, 298, 574 P.3d 1031 (2024) (citing RCW 49.58.020, -.030 (“referring to good faith, bona fide job-related factors that justify a differential in compensation”)).

aspect of EPOA jurisprudence. *See, e.g.*, *Davis*, 2026 WL 914781, at *4; *Eggleston v. Bruckner Truck Sales Inc.*, No. C25-1467, 2025 WL 3153503, at *2 (W.D. Wash. Nov. 12, 2025). But while the *Branson II* court clarified the connection (or lack thereof) between "bona fide applicant" and a statutory violation of EPOA, it did not purport to address whether an EPOA violation harms a plaintiff's concrete interests for Article III standing purposes in federal court. *See Davis*, 2026 WL 914781, at *3. Therefore, the question of whether only "bona fide applicants" can suffer a cognizable *injury* from an alleged EPOA violation remains open.

Bona fide is a Latin term meaning "in good faith." Bona Fide, *Black's Law Dictionary* (12th ed. 2024). A *bona fide* action is one "[m]ade in good-faith; without fraud or deceit." *Id.* It is "sincere; genuine." *Id.* "Apply" has several definitions, but relevant here, it means "[t]o make a formal request or motion." Apply, *Black's Law Dictionary* (12th ed. 2024). In other words, a *bona fide application* is something undertaken with more gravity than a mere request and, specifically, an act performed with intentionality and sincerity. Exactly what allegations courts in this District deem sufficient to find that a plaintiff was, in fact, a good-faith applicant, varies from case to case. Here, the Court will attempt to provide more clarity as to what must be pleaded for a plaintiff to be considered a "bona fide applicant" for the purposes of Article III standing.

In interpreting a statute, a court must "strive to give effect to the plain, common-sense meaning of the enactment without resorting to an interpretation that 'def[ies] common sense.'" *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1051 (9th Cir. 2003) (quoting *Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1473–74 (9th Cir. 1987)); *see also Serrato v. John Hancock Life Ins. Co.*, 31 F.3d 882, 885 (9th Cir. 1994) (a court takes "a 'common-sense view' of the language" in a statute) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987)). This Court will consider a plaintiff to be a "bona fide applicant" if the pleadings show that the

plaintiff applied for a position and: (a) subjectively wanted the position and was qualified for the position; *or* (b) was qualified for the position *and* after applying, was either offered an interview or advanced a step in the application process. This standard is based on this Court's common-sense understanding of what it means to be good-faith applicant and the injury-in-fact requirements of Article III. *See Spokeo*, 578 U.S. at 339 (holding that an injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical").

In the context of an EPOA complaint, a plaintiff themself must assert that they wanted the position—that is, a defendant cannot make that allegation on the plaintiff's behalf. "Unless the plaintiff was 'a bona fide applicant' for employment, an EPOA violation involving 'a job posting with no compensation information included' does not 'by itself . . . manifest concrete injury[.]" *Davis*, 2026 WL 914781, at * 3 (quoting *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, No. C24-425, 2025 WL 3062646, at *4 (W.D. Wash. Oct. 31, 2025)). This makes sense, because failing to disclose pay information cannot impact pay negotiations, time spent interviewing, or compensation for a job the plaintiff never actually intended to pursue or genuinely wanted to obtain. *Davis*, 2026 WL 914781, at *3. "Thus, 'a nominal applicant with no interest in the position will neither receive a benefit from early pay disclosure nor be harmed by the lack thereof.'" *Id.* (quoting *Les Schwab*, 2025 WL 3062646, at *3).

A plaintiff also must be reasonably qualified for the position, because if they were not qualified and could not realistically be offered the job, then they could not be injured by the employer's lack of compliance with the required EPOA disclosure.[3] After all, an applicant is in no position to negotiate the salary of a job they have no prospect of obtaining. Still, if a plaintiff

[3] The Court adds the term "reasonably" here in recognition of the *Branson II* court's observation that "[t]he reality is that many individuals apply for multiple job postings when they are seeking employment and may not have all the qualifications listed." *Branson II*, 5 Wn.3d at 304.

alleges that they were qualified for the position, they must support it with facts beyond a conclusory allegation, so the Court can make a case-by-case assessment. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended by denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory . . . ."). And relatedly, the plaintiff must allege that they progressed in the recruitment process—that is, they must plausibly demonstrate the viability of their candidacy for the job. If the employer demonstrated that it had no intention of hiring the applicant—by, for example, declining to extend an offer to interview—then plaintiff's lack of knowledge regarding compensation does not harm them.

Defendant Accel claims that the Remanded Cases were incorrectly decided. Dkt. No. 44 at 14. Specifically, Defendant argues that (1) these cases do not articulate a consistent standard, thus "illustrat[ing]" that they are not persuasive; (2) to the extent that any of the cases find that a plaintiff's specific allegations about the loss of time and the inability to evaluate and negotiate pay are insufficient to assert a concrete injury, they are flawed and contrary to the intent of the statute; and (3) the cases have consistently applied the incorrect standard for CAFA removals. *Id.* The Court finds these arguments unpersuasive and will briefly address each in turn.

**a. Remanded Cases Were Decided Correctly**

Defendant Accel first alleges that the Remanded Cases do not articulate a consistent standard. *Id.* The standards that courts have applied in those cases are not "conflicting" (*id*. at 13), but insofar as they are unclear, the Court has provided clarity on what it takes for a plaintiff to be considered a "bona fide applicant" for the purpose of an Article III injury-in-fact inquiry. *See supra* Section III.A.2.

Second, Defendant Accel alleges that the courts' previous decisions holding that the Remanded Cases lack allegations sufficient to find injury-in-fact are "flawed and contrary to the

intent of the statute." Dkt. No. 44 at 14. In support of its argument, Defendant cites *Magadia. Id.* (characterizing *Magadia* as "holding that an alleged wage statement violation creates a cognizable Article III injury, even if the employee was not underpaid"). In *Magadia*, however, the party seeking federal jurisdiction insisted that even though he had not suffered a harm himself, the California statute at issue is *qui tam*, meaning it is a "well-established exception" to the traditional Article III analysis. *Magadia*, 999 F.3d at 674 (quoting *Spokeo*, 578 U.S. at 354 n.* (Thomas, J., concurring)). The California Supreme Court had explicitly categorized the statute as "a type of *qui tam* action[.]" *Magadia*, 999 F.3d at 675. Here, Defendant Accel makes no similar analysis alleging that the EPOA is a *qui tam* action, and the Court finds no Washington Supreme Court case distinguishing it as such. *Magadia* is thus unpersuasive in this regard. Next, Defendant cites *Woodward v. Boeing Employees Credit Union*, No. C23-33, 2023 WL 4847126 (W.D. Wash., Jul. 28, 2023). Dkt. No. 44 at 14. *Woodward* deals with a wholly different state statute and is additionally unpersuasive. *See Woodward*, 2023 WL 4847126, at *1 (Plaintiff sued for violations of the Washington State Consumer Protection Act, among other claims.). Defendant Accel does not provide any cases or analysis as to the intent of the EPOA and how the Remanded Cases are contrary to it. The Court therefore finds this argument underdeveloped.

Further, the allegation that Plaintiff "remains unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts Plaintiff's current and lifetime wages" (Dkt. No. 1-2 at 7 ¶ 32) does not allege *concrete* injury. Plaintiff does not allege what these "other available positions in the marketplace" were (or are), and he does not allege any facts that demonstrate how his current and lifetime wages are actually diminished by this inability. The Court might presume circumstances where the alleged injury could be rendered concrete, but Plaintiff has not pleaded them here.

Third, Defendant Accel alleges that the Remanded Orders consistently applied the incorrect standard for CAFA removals. *See* Dkt. No. 44 at 14–15. Defendant Accel is correct insofar as it asserts that "no antiremoval presumption attends cases invoking CAFA[.]" *Id.* at 15 (quoting *Dart Cherokee*, 574 U.S. at 89). But although the Remanded Orders cited in Defendant Accel's response (*see* Dkt. No. 44 at 15 (collecting cases)) do not employ this specific language, the orders still appropriately analyzed each plaintiff's lack of Article III standing. After all, if there is insufficient Article III standing, a *lack* of a "strong presumption against removal" cannot itself satisfy the requirements of subject-matter jurisdiction. *See Abrego*, 443 F.3d at 685; *Warth*, 422 U.S. at 498 (holding that standing is a "threshold question" that "determin[es] the power of the court to entertain the suit").

Because the Remanded Cases were decided correctly, the Court will apply the standards articulated in them to assess whether there are sufficient allegations to find that Plaintiff was a "bona fide applicant" that suffered an injury-in-fact to establish Article III standing.

**b. Scope of the Standing Inquiry**

The Court must now determine whether Plaintiff meets the "bona fide applicant" requirement of the EPOA standing analysis. As a preliminary matter, the Court will clarify what jurisdictional allegations may be accepted for the Court to conduct this inquiry.

Defendant Accel is not limited to the allegations in the complaint in evaluating its removal jurisdiction. *See Davis*, 2026 WL 914781, at *4. "[A] defendant seeking to remove an action . . . must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (citing *Gaus*, 980 F.2d at 567). When a motion to remand challenges those requirements, courts evaluate the motion using the "same framework" that applies to motions to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Id.* Under that framework, a plaintiff seeking

remand of a removed action can mount either a "facial" or "factual" challenge to the defendant's jurisdictional allegations in the notice of removal. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)); *Leite*, 749 F.3d at 1121–22. If the plaintiff asserts a *facial* challenge—meaning, they accept "the removal notice's factual allegations but . . . assert[] that those allegations are facially insufficient to invoke federal jurisdiction"—courts "accept the notice's factual allegations as true[.]" *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023). If, on the other hand, the plaintiff asserts a *factual* challenge—meaning, they dispute the truth of the facts on which removal jurisdiction is based—the defendant must present "competent proof" establishing the jurisdictional fact by a preponderance of the evidence. *Harris*, 980 F.3d at 704; *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)).

In either situation, once the defendant alleges a factual basis for federal jurisdiction, a plaintiff seeking remand cannot avoid being in federal court simply because the complaint omits certain jurisdictional facts. "When reviewing a [facial] dismissal pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (second alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States,* 859 F.3d 1152, 1156–57 (9th Cir. 2017)). However, "[i]f the moving party converts the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (quotation and citation omitted). When addressing a factual attack, a court may consider evidence outside of the complaint without converting the motion to dismiss into a motion for summary judgment. *Am.*

*Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).The Court applies this framework to determine whether the facts alleged suffice to invoke the Court's jurisdiction.

**c. Plaintiff's Challenge to Standing is Factual**

Defendant Accel argues that Plaintiff mounts only a facial challenge to standing, and that Defendant Accel's jurisdictional assertions must therefore be taken as true. Dkt. No. 44 at 11–12 (citing *Salter*, 974 F.3d at 964). Defendant Accel's Notice of Removal includes no discussion of Article III standing. *See* Dkt. No. 1. While the Notice itself does not assert anything about Plaintiff's intent when applying for the position (*see generally id.*), Defendant Accel argued, for the first time, in its opposition to Plaintiff's motion that,

> Plaintiff does not contest that he was a good faith or a bona fide applicant. Instead, Plaintiff's argument is that his Complaint does not contain certain allegations. Because Plaintiff has failed to present any evidence or reasoned argument, Plaintiff's Motion presents only a facial challenge to Defendant's removal.

Dkt. No. 44 at 11. Although Defendant Accel does not expressly make this argument, it appears that it is hoping the Court will treat these assertions as amendments to the Notice of Removal. Because Plaintiff has not presented contrary evidence of his intent, Defendant Accel argues that the Court should accept its assertions as true.

Even assuming, however, that Defendant Accel's opposition brief supplements the removal notice,[4] the Court disagrees that Plaintiff's jurisdictional challenge is facial and not factual. In Plaintiff's Motion to Remand, Plaintiff argues that "there is no dispute that Plaintiff

[4] To be clear, however, Defendant Accel's brief does not supplement its removal notice. "The notice of removal cannot be amended to add new bases for removal after the thirty day removal period has run, nor can a defendant present new grounds for removal for the first time in opposition to a motion for remand." *Rader v. Sun Life. Assur. Co. of Canada*, 941 F. Supp. 2d 1191, 1196 (N.D. Cal. 2013); *see ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of the State of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000).

did not plead any facts to show that he was a 'bona fide' applicant or any other facts establishing his subjective intent." Dkt. No. 37 at 10. Given this language, it appears to the Court that Plaintiff *does* contest that he was a "bona fide applicant." The gist of Plaintiff's argument is that Defendant Accel has *not* shown that he was a "bona fide applicant," because Plaintiff pleaded nothing about his intent, and that the alleged EPOA violation is therefore a mere "technical or procedural violation" of the sort courts have repeatedly held does "not manifest concrete injury[.]" Dkt. No. 37 at 9 (quoting *Aaron's*, 733 F. Supp. 3d at 1071 (internal quotation marks omitted)). This articulates a factual challenge, because it attacks the truth of Defendant Accel's allegation that Plaintiff was a "bona fide applicant." Defendant Accel emphasizes that Plaintiff has not introduced evidence or reasoned argument outside the pleadings to refute standing. Dkt. No. 44 at 11. But "[a] factual attack . . . need only challenge the truth of the defendant's jurisdictional allegations" with "reasoned argument as to why" the allegations "are not supported by evidence." *Harris*, 980 F.3d at 700.

Because Plaintiff raises a factual challenge as to whether he was a "bona fide applicant," Defendant Accel must respond with "competent proof" establishing the disputed fact "by a preponderance of the evidence[.]" *See Harris*, 980 F.3d at 702 (citation omitted). Defendant Accel submitted a declaration and exhibits which they contend indicate that Plaintiff was a "bona fide applicant." *See* Dkt. No. 39 (Bishop Decl.). Defendant also claims that Plaintiff's own allegations establish standing. Dkt. No. 44 at 11–13.

**d. Defendant Accel Fails to Show Plaintiff Suffered Injury-in-Fact**

As detailed below, the Court finds that although Defendant Accel presented "competent proof" that Plaintiff was qualified for the position for which he applied, there are insufficient allegations to show that Plaintiff subjectively wanted the position or actually progressed in the

recruitment process. Therefore, Plaintiff was not a "bona fide applicant" that suffered the type of harm that the EPOA seeks to prevent or redress.

**(1) Plaintiff Did Not Subjectively Want the Position**

Nowhere in Plaintiff's complaint does he allege that he subjectively wanted the position. *See generally* Dkt. No. 1-2. Because Plaintiff did not allege that he wanted the position, Defendant Accel needs to show Plaintiff was qualified for the job and actually progressed in the recruitment process for this Court to find that Plaintiff was a "bona fide applicant."

**(2) Plaintiff Was Qualified for the Position**

In a declaration (Dkt. No. 39), counsel for Defendant Accel submitted several exhibits for the Court's consideration, including Plaintiff's resume (Dkt. No. 39-2). In its opposition, Defendant Accel emphasizes that "Plaintiff's resume reflected work experience in behavioral, mental health, and psychology positions as well as in child educational settings, and a credential verification from the State of Washington reflecting that he maintained a Counselor Agency Affiliated Registration." Dkt. No. 44 at 9.

According to Plaintiff's resume, Plaintiff has a degree from the University of Washington in Community Psychology (although the type of degree is not specified) and skills in curriculum development, group therapy design and lead, Independent Educational Plan design and implementation, and motivational interviewing. Dkt. No. 39-2 at 5. He has one year of experience as a teacher's assistant between 2017 and 2018, and at least a couple of years of direct client counseling and case management services experience, including with children. *Id.* at 2–4. He also had a valid Washington Counselor license at the time of his application to Accel Schools LLC. *Id.* at 6.

The Virtual Counselor position with Defendant Accel "supports overall student success by partnering with staff members and families to inform student specific academic programming,

create and maintain graduation and career plans, and provide proactive and preventative services." Dkt. No. 1-2 at 15 (screenshots of job posting). The position requires a bachelor's degree, a valid Washington Counselor license, and one year of previous experience in counseling or advisement. Dkt. No. 1-2 at 16–17. Plaintiff seems to meet all these requirements from the face of his resume, although it is unclear if his credential from the University of Washington in Community Psychology is a bachelor's degree. Furthermore, the job description lists the following under the header "About the Opportunity":

- Deliver proactive guidance curriculum to individuals and groups
- Respond to individual and group needs with responsive counseling and programming
- Review transfer student transcript and inform appropriate course placements . . .
- Create and maintain student graduation plans
- Provide career readiness curriculum and facilitate creation of career plans
- Deliver Social-Emotional Learning curriculum

Dkt. No. 1-2 at 15–16. Most of the Virtual Counselor responsibilities are centered on academic-related goals and tasks, not emotional or behavioral support. But although Plaintiff's work experience and education is focused on behavioral issues and psychology, there is noticeable overlap between his resume and the Virtual Counselor position's responsibilities.

Defendant Accel made a reasonable jurisdictional allegation, based on the "competent proof" of Plaintiff's resume, that Plaintiff was qualified for the position by a preponderance of the evidence. *See Leite*, 749 F.3d at 1121. However, this allegation, on its own, is still insufficient to find Plaintiff suffered an injury-in-fact, because a "bona fide applicant" must also subjectively want the position or actually progress in the recruitment process. This might take the

form of an interview offer or some other step forward. *See supra* Section III.A.2. Because this Court finds that Plaintiff did not plead that he wanted the position (*see supra* Section III.A.2.d.(1)), Defendant needs to show that Plaintiff actually progressed in the recruitment process.

**(3) Plaintiff Did Not Actually Progress In The Recruitment Process**

Defendant Accel argues that Plaintiff's own allegations of harm establish standing. Dkt. No. 44 at 11–13. The Court agrees with the chorus of decisions where courts in this District held that allegations virtually identical to those presented here are insufficient to establish a plaintiff's injury-in-fact. *See, e.g.*, *Milito v. Wizards of the Coast LLC*, No. C24-1111, 2025 WL 3754049, at *4 (W.D. Wash. Dec. 29, 2025); *Floyd v. Photon Infotech Inc.*, No. C24-1372, 2025 WL 3442736, at *4 (W.D. Wash. Dec. 1, 2025); *Les Schwab*, 2025 WL 3062646, at *4; *Spencer v. Total Renal Care, Inc.*, No. C24-1359, 2024 WL 4834901, at *3 (W.D. Wash. Nov. 20, 2024); *Kent*, 2024 WL 4825383, at *3. Defendant Accel points to Plaintiff's allegations that the nondisclosure of pay information "negatively impacte[d] [his] current and lifetime wages," adversely affected his "ability to negotiate pay," and "direct[ly]" resulted in "economic and non-economic harm[.]" Dkt. No. 44 at 10 (quoting Dkt. No. 1-2 at 7 ¶¶ 32–33, 35). These allegations are threadbare, conclusory, and speculative and, thus, cannot support Article III standing. Absent a genuine interest in the position, such allegations do not establish that the nondisclosure "placed [Plaintiff] at a disadvantage relative to other applicants" or "resulted in him having to exit a lengthy interview process after learning the pay was insufficient for his needs." *Floyd*, 2025 WL 3442736, at *4 (quoting *Partridge v. Heartland Express Inc. of Iowa*, No. C24-5486, 2024 WL 4164245, at *4 (W.D. Wash. Sept. 12, 2024)); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (holding that conclusory allegations are insufficient to confer standing).

Defendant Accel never offered Plaintiff an interview, much less a job, so Plaintiff was never in a position to negotiate pay from a disadvantaged position or waste time participating in futile interviews.

Beyond a conclusionary allegation that he was "qualified to perform the position for which he applied" (Dkt. No. 1-2 at 6 ¶ 26), there is no sign in the record that Plaintiff would have been selected for an interview or would have ever engaged in pay negotiations. Although Defendant Accel made a reasonable jurisdictional allegation that Plaintiff was qualified for the Virtual Counselor position (*see supra* Section III.A.2.d.(2)), Defendant Accel does not allege that it would have offered Plaintiff an interview, or that Plaintiff was the type of candidate it was looking to hire. *See* Dkt. No. 44. Without these facts, the Court cannot conclude that Plaintiff suffered, or had a material risk of suffering, the type of harm contemplated by the EPOA. *See Total Renal Care, Inc.*, 2024 WL 4834901, at *3 (rejecting "conclusory allegation that Plaintiff was qualified to perform the position"); *Olea v. Chipotle Mexican Grill, Inc.*, No. C24-1643, 2026 WL 1361581, at *3 (W.D. Wash. May 15, 2026) (same); *Spencer v. Aramsco Inc.*, No. C25-1672, 2026 WL 376942, at *3 (W.D. Wash. Feb. 11, 2026) (finding allegations regarding adverse effect on pay negotiations and economic harm "assume without support that [plaintiff] would have been selected for an interview and ultimately hired for this or equivalent jobs").

Defendant Accel also points to Plaintiff's allegation that he "lost valuable time applying for a position." Dkt. No. 44 at 10 (quoting Dkt. No. 1-2 at 7 ¶ 34). "But time lost in merely submitting an application is 'not an injury that the EPOA seeks to prevent or redress.'" *Partridge*, 2024 WL 4164245, at *4 (quoting *Vera Whole Health*, 2024 WL 3276578, at *3). "A generalized assertion of time lost, therefore, does not support Article III standing." *Id.*; *see also*

*Davis*, 2026 WL 914781, at *7 (noting that to the extent plaintiff was not a bona fide applicant, time lost for applying to the position was "self-inflicted").

*  *  *

In sum, none of the jurisdictional allegations shows that Plaintiff suffered a "concrete and particularized" injury, *Spokeo, Inc.*, 578 U.S. at 339 (citation modified), that "actually harm[s], or present[s] a material risk of harm" that the EPOA seeks to prevent or redress, *Magadia*, 999 F.3d at 679 (quoting *Robins*, 867 F.3d at 1113). Defendant has failed to provide competent proof showing that removal was proper by a preponderance of the evidence. *See Harris*, 980 F.3d at 704. The allegations are insufficient to find Plaintiff has a concrete, particularized injury-in-fact. Plaintiff's lack of Article III standing eliminates this Court's subject-matter jurisdiction. *See Warth*, 422 U.S. at 498.

**B. Remand to State Court Is Not Futile**

Plaintiff requests that the instant case be remanded to state court. Dkt. No. 37 at 13. Defendant Accel alleges that a remand to state court would be futile, because if the Court does not find sufficient injury-in-fact for Article III, "Washington's parallel requirement for an 'injury in fact'" would also not be met. Dkt. No. 44 at 17–19.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded . . . Moreover, the district court generally *must* remand the case to state court, rather than dismiss it." *Polo v. Innoventions Int'l LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (emphasis in original) (citation modified). A "narrow 'futility' exception to this general rule" allows the court to dismiss the case rather than remand it "if there is 'absolute certainty' that the state court would dismiss the action following remand." *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) (quoting *Polo*, 833 F.3d at 1197–98 (citation omitted)). Defendant Accel seeks to apply this narrow exception,

arguing the Washington courts would apply the same "injury in fact" requirement as federal courts to assess Plaintiff's standing. Dkt. No. 44 at 17–19.

However, it is "far from clear," and not "absolute[ly] certain[]," that a state court would "simply dismiss[]" Plaintiff's claims. *Polo*, 833 F.3d at 1198. Although Defendant Accel cites Washington's two-part standing test—which analyzes (1) the statue's "zone of interest[]"; and (2) the plaintiff's "injury in fact"—it cites no case by a Washington court dismissing EPOA claims under this test. Dkt. No. 44 at 17–19 (quoting *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 186, 157 P.3d 847 (2007)). The Court agrees with Plaintiff that "statutory standing in Washington state courts is not coextensive with the more stringent federal standing requirements under Article III[.]" Dkt. No. 46 at 10; *see, e.g.*, *Yount v. Whole Foods Market Pac. Nw. Inc.*, No. C24-534, 2026 WL 593080, at *4 (W.D. Wash. Mar. 3, 2026). Washington is a notice-pleading state and, after an opposing party has filed an answer, Washington courts freely grant leave to amend when justice so requires. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006) (Pleadings "merely require[] a simple, concise statement of the claim and the relief sought." (citing Washington Superior Court Rule 8(a))). In cases like this, involving alleged procedural violations, state courts apply a "relaxed" injury requirement, which demands a "reasonable probability" that the violation "will threaten a concrete interest of the" plaintiff, and that the interest is one "protected by the statute or constitution." *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 303, 268 P.3d 892 (2011). Relevant to the EPOA, the Washington Supreme Court, in *Branson II*, declined to address whether "job applicants who do not have a good-faith intent to obtain employment lack statutory standing" but nevertheless observed such plaintiffs are "likely . . . within the [EPOA's] protected zone of interest." 5 Wn.3d at 304 n.7. Defendant Accel has not meaningfully distinguished this

case from numerous others involving virtually identical pleadings that have been remanded for lack of standing.

Because the Court lacks "absolute certainty" that the Superior Court would dismiss Plaintiff's action following remand, *Polo*, 833 F.3d at 1198 (citation omitted), the Court GRANTS Plaintiff's request to remand this case to state court.

**C. The Court Denies Defendant's Request for Jurisdictional Discovery**

Defendant asks that to the extent the Court is inclined to remand, the Court should permit Defendant to engage in jurisdictional discovery into the accuracy of its standing allegations. Dkt. No. 44 at 16; Dkt. No. 38 (Motion to Compel Jurisdictional Discovery).

First, a civil action is "the action as defined by the plaintiff's complaint." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 442 (2019). A bedrock principle of pleading is that "[a]s the master of his complaint, [the plaintiff] can decide what claims to present and in what forum to litigate." *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 624 (9th Cir. 2025) (quoting *Walker v. Arizona*, 158 F.4th 971, 982 (9th Cir. 2025)); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). Therefore, when determining jurisdiction, a court "look[s] to the operative complaint . . . ." *Faulk*, 159 F.4th at 623.

Second, whether to permit such discovery typically lies within the Court's discretion. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation omitted). A district court may deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Hansen v. U.S.*, No. 98-36172, 2001 WL 96370, at *1 (9th Cir. Feb. 5, 2001) (quoting *Am. W. Airlines, Inc.*

*v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989)), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted).

Jurisdictional discovery is not appropriate here, because it is apparent that Plaintiff lacks standing, and none of the jurisdictional discovery that Defendant Accel seeks or would be entitled to alters that calculus. *Kent*, 2024 WL 4825383, at *4 (citation modified). Further, Defendant Accel's proposed inquiry into discovery related to the accuracy of Plaintiff's standing allegations is "based on little more than a hunch." *Boschetto*, 539 F.3d at 1020. For both of these reasons, the Court DENIES Defendant Accel's request for jurisdictional discovery.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion to Remand (Dkt. No. 37) is GRANTED. Defendant Accel's Motion to Compel Jurisdictional Discovery (Dkt. No. 38) is DENIED. This case is REMANDED to King County Superior Court, **effective fourteen (14) days from the date of this order**. *See* LCR 3(i).

Dated this 4th day of September, 2026.

Tana Lin
United States District Judge